Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Veronica E. McKnight, Esq. (SBN: 306562)
**Hyde & Swigart**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

[Additional Attorneys for Plaintiff on Signature Page]

Attorneys for Jacqueline Selby

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jacqueline Selby,<br><br>            Plaintiff,<br><br>v.<br><br>Ocwen Mortgage Servicing, Inc., Ocwen Loan Servicing, LLC, JPMorgan Chase Bank, N.A., as trustee for Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2004-13,<br><br>            Defendants. | **Case No:** '17CV0973 CAB BLM<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. NEGLIGENT VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227**<br>**2. INTENTIONAL VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227**<br>**3. FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *ET SEQ.***<br>**4. ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CIV. CODE § 1788 *ET SEQ.***<br>**5. NEGLIGENCE**<br>**6. NEGLIGENCE PER SE** |

# INTRODUCTION

1.  The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

2.  In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.

3.  Toward this end, Congress found that:

    > [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.*Id.* at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4.  Congress also specifically found that "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the time of call...." *Id.* at §§ 12-13; see also, *Mims*, 132 S. Ct. at 744.

5.  Plaintiff Jacqueline Selby ("Plaintiff"), by her attorneys, bring this action to challenge the conduct of Ocwen Mortgage Servicing, Inc. ("OMS"), and Ocwen Loan Servicing, LLC ("OLS") (collectively "Ocwen"), with regard to attempts by defendant to unlawfully and abusively collect a debt allegedly

1   owed by Plaintiff to Defendant JPMorgan Chase Bank, N.A., as trustee for

2   Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series

3   20014-13.   Further, Plaintiff bring this action for damages and any other

4   available legal or equitable remedies resulting from the actions of Defendants

5   in their negligent and/or willful violations of the TCPA, as well as related

6   state and federal consumer protection laws.

7   6.   While many violations are described below with specificity, this Complaint

8   alleges violations of the statutes cited in their entirety.

9   7.   The statute of limitations for the claims asserted here is tolled due to the

10   commencement of a class action based on same or similar allegations filed

11   against Defendant on October 27, 2014 in the United States District Court,

12   Northern District of Illinois, Case Number 1:14-cv-08461. *American Pipe &*

13   *Construction Co v. Utah*, 414 U.S. 538 (1974).

14   8.   Plaintiff makes these allegations on information and belief, with the exception

15   of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which

16   Plaintiff alleges on personal knowledge.

17   9.   While many violations are described below with specificity, this Complaint

18   alleges violations of the statutes cited in their entirety.

19   10.   Any violations by Defendants were knowing, willful, and intentional, and

20   Defendant did not maintain procedures reasonably adapted to avoid any such

21   violation.

22

23   **JURISDICTION AND VENUE**

24   11.   Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1332, and 28 U.S.C. §

25   1367 for supplemental state claims.

26   12.   This action arises out of Defendants' violations of federal law. 47 U.S.C. §

27   227(b); 15 U.S.C. § 1692k(d); see also *Mims v. Arrow Fin. Servs. LLC*, 132 S.

28   Ct. 740 (2012).

13.   Because Defendants conduct business within the State of California, personal jurisdiction is established.

14.   Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants conducted business within the State of California and Plaintiff is located within this district, as is the real property that is the security for the loan or loans that are the subject of Ocwen's debt collection efforts.

PARTIES

15.   Plaintiff is a natural person who resides in the City of San Diego, State of California.

16.   Defendant Ocwen Mortgage Servicing, Inc. has its principal place of business in Frederiksted, St. Croix in the U.S. Virgin Islands.

17.   Defendant Ocwen Loan Servicing, LLC has its principal place of business in the City of West Palm Beach, in the State of Florida.

18.   Defendant OMS is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153 (39).

19.   Defendant OLS is, and at all times mentioned herein was, a limited liability company and  a "person," as defined by 47 U.S.C. § 153 (39).

20.   Defendant JPMorgan Chase Bank, N.A. ("Chase"), is a banking association organized under the laws of the United States. It has retail banking locations throughout the State of California and this District and does business worldwide. It acts as trustee for a Delaware trust titled Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 20014-13 ("BSALTA"), which was created by and is governed by a pooling and serving agreement dated December 1, 2004 ("PSA"). A complete copy of the PSA was filed with the Securities and Exchange Commission as Form 8-K on January 14, 2005 and is archived by that regulatory body as file number 333-106323-25, film number 05531271. Chase is sued here solely in its capacity as Trustee for the BSALTA trust.

## FACTUAL ALLEGATIONS

21. Plaintiff borrowed money in 2004 from non-party Greenpoint Mortgage Funding, Inc., secured by real property located in the City of San Diego owned by Plaintiff (the "Mortgage"). While not her primary residence at the time the Mortgage was obtained, the proceeds from the Mortgage were used for personal, family, and household purposes. As such the debt is a consumer debt within the meaning of the RFDCPA and the FDCPA.

22. In 2009, Ms. Selby hired an attorney to represent her in her finances, and he sent a written notice of representation to  Bank of America, which at the time was the servicer of the Mortgage.

23. In 2013, Ocwen took over servicing of the Mortgage from Bank of America and began collection attempts, including repeated telephone calls and written demands for payments. At the time Ocwen commenced collection, the Mortgage was already in default.

24. At no time since 2013 up to and including the date of filing has Ocwen had any ownership interest in the Mortgage. As the servicer, Ocwen's duties are limited to processing payments and collecting money for another, specifically the BSALTA trust and Chase as the trustee. As such, Ocwen is a "debt collector" within the meaning of the FDCPA and RFDCPA.Plaintiff, via her attorney, sent a letter dated to Ocwen on September 20, 2013, notifying Ocwen of its violations of state and federal debt collection laws and re-affirming that Plaintiff was represented by counsel.

25. However, Between November 20, 2014 and August 11, 2016, Ocwen called Plaintiff on her cellular telephone number ending in 7139 via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

26. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

27. When Plaintiff would answer the calls from Defendants, there would often be a silence, sometimes with a click or a beep-tone, before an Ocwen representative would pick up and start speaking.

28. Sometimes, Plaintiff would receive calls from Defendants in which the caller was a recorded voice or message, rather than a live representative.

29. In total, Plaintiff has received at least 1008 calls from Defendant on Plaintiff's cellular telephone.

30. For example, Plaintiff received at least 26 calls in a ten day span in December 2014.

31. Plaintiff did not provide express consent to Defendant to receive calls on Plaintiff's cellular telephone, pursuant to 47 U.S.C. § 227 (b)(1)(A).

32. Ocwen was reminded of Plaintiff's attorney's contact information multiple times, including on multiple loan modification applications.

33. Further, Plaintiff clearly revoked any type of prior express consent, if prior express consent ever existed, by stating that Plaintiff no longer wished to be contacted by phone.

34. Specifically, Plaintiff also made at least a dozen oral requests herself for Ocwen to stop calling in 2015.

35. Plaintiff answered several of the above mentioned autodialed telephone calls from Ocwen and asked them to stop calling. Despite these clear and unmistakable requests, the calls continued without interruption. Each of these requests terminated any express or implied consent that Ocwen may have had prior to beginning its campaign of harassment by telephone.

36. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff.

37. The calls by Ocwen to Plaintiff's cell phone continued, even after Plaintiff's oral revocation.

38. Plaintiff even received three (3) calls from Ocwen after the property was sold and the loan was satisfied on August 8, 2016.

39. These calls were made by Ocwen or its agent, with Ocwen's permission, knowledge, control, and for the benefit of Ocwen, Chase (both individually and in its capacity as trustee), and the BSALTA trust.

40. As a result, the telephone calls by Ocwen, or its agent(s), violated 47 U.S.C. § 227(b)(1).

41. Through Ocwen's actions, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

42. Plaintiff was personally affected, becoming frustrated and distressed that, despite telling Ocwen to stop calling her cellular phone, Ocwen continued to harass Plaintiff with collection calls using an ATDS.

43. The unrelenting, repetitive calls disrupted Plaintiff's daily activities and the peaceful enjoyment of Plaintiff's personal and professional life, including the ability to use Plaintiff's phone.

44. The calls placed by Ocwen to Plaintiff were extremely intrusive, including Plaintiff's relationships with close family members. Specifically, Plaintiff began to ignore or send to voicemail many incoming calls from unknown numbers, out of frustration in dealing with Ocwen's unwanted and intrusive calls. In doing so, Plaintiff missed important communications from friends and family.

**STANDING**

45. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    a. a valid injury in fact;

b.  which is traceable to the conduct of Defendant;

c.  and is likely to be redressed by a favorable judicial decision.

See, *Spokeo, Inc. v. Robins, 578 U.S. ___ (2016) at 6*, and   *Lujan v. Defenders of Wildlife, 504 U.S. 555 at 560*.

46.  In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

### A.  *The "Injury in Fact" Prong*

47.  Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo (Id.)*.

48.  For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists.  In the present case, Plaintiff was called on Plaintiff's cellular phone by Ocwen.  Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff.  *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7thCir. 2012).  All three of these injuries are concrete and *de facto*.

49.  For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way."  *Spokeo, Inc. v. Robins, 578 U.S. ___ (2016) at *7*.  It was Plaintiff's personal privacy and peace that was invaded by Ocwen's persistent phone calls using an ATDS.  All of these injuries are particularized and specific to Plaintiff.

### B.  *The "Traceable to the Conduct of Defendant" Prong*

50.  The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that Plaintiff's injury is traceable to the conduct of Ocwen.

51.   In the instant case, this prong is met simply by the fact that the calls to plaintiff's cellular phone were placed either by Ocwen directly or by its agent at its direction and control.

C.  *The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

52.   The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

53.   In the present case, Plaintiff's Prayers for Relief include a request for damages for each call made by Ocwen, as authorized by statute in 47 U.S.C. § 227.  The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.

54.   Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Ocwen from the alleged abusive practices in the future.   The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

55.   Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in  *Spokeo, Inc. v. Robins, 578 U.S. ___ (2016),* Plaintiff has standing to sue Ocwen on the stated claims.

**FDCPA Allegations**

56.   Using illegal conduct to collect a consumer debt, including placing calls in violation of the TCPA, is unfair and unconscionable and therefore violates the FDCPA, including but not limited to 15 U.S.C. § 1692f.

57.   Through the above-described conduct of calling Plaintiff and causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called

number, Ocwen engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of the debt, in violation of 15 U.S.C. § 1692d(5).

58. Through this conduct of calling Plaintiff continuously after she informed Ocwen numerous times that she wished the calls to cease, Ocwen used false, deceptive, or misleading representations in connection with the collection of any debt, in violation of 15 U.S.C. § 1692e.

59. Through this conduct of communicating with Plaintiff in connection with the collection of a consumer debt after Ocwen knew that Plaintiff was represented by an attorney, Ocwen violated 15 U.S.C. § 1692c(a)(2).

60. In the above-detailed ways, and others as may be further developed via discovery, Ocwen violated the FDCPA and is responsible for damages and attorneys' fees to Plaintiff. Ocwen should similarly be enjoined from further such business practices.

61. Each of the above-detailed violations of the FDCPA are also violations of the RFDCPA, which is expressly incorporated into California law. Civ. Code § 1788.17.

**Chase and the BSALTA Trust are Liable for Ocwen's Violations**

62. The TCPA imposes liability upon any person who makes unlawful phone calls using an autodialer or a prerecorded message. Congress vested the FCC with authority to promulgate rules and regulations implementing the TCPA, see 47 U.S.C. § 227(b)(2). The FCC has exercised its authority and declared through rulemaking and adjudicative orders that liability for a TCPA violation may be imputed to a party that did not itself place the unlawful calls if the party that placed the calls did so as an agent of that party.

63. To ensure that creditors and debt collectors comply with the TCPA and call only those consumers who have consented to receive autodialed or

HYDE & SWIGART
Consumer Protection Attorneys

prerecorded message calls, the FCC holds the creditor responsible for demonstrating that the consumer provided prior express consent to be called. *FCC Declaratory Ruling*, 23 FCC Rcd. 559 (¶10).

64. Hence, when as here, an autodialed or prerecorded message call is made to a wireless number on a creditor's behalf, the creditor bears the responsibility for any resulting violation of the TCPA. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call. *Id*.

65. Alternatively, an entity may be held vicariously liable for violations of the TCPA "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6528 ¶ 28 (2013).

66. Here, Chase expressly authorized Ocwen to act as its agent and the agent of the BSALTA trust for servicing the respective loans in the trust pool, and specified in detail how Ocwen was to carry out that authority in writing, starting with the Pooling and Servicing Agreement ("PSA") for the BSALTA trust.

67. The PSA for the BSALTA trust originally designated non-party Wells Fargo Bank, N.A., as the master servicer for the loans in the trust pool. However, Plaintiff is informed and upon that basis alleges that at least as early as June 1, 2013, Ocwen is the master servicer for the BSALTA trust and has succeeded to all rights and responsibilities of the master servicer under the PSA.

68. As the trustee, Chase has broad authority over the servicer. For example, the PSA provides that the servicer will hold all documents, records, and funds in its possession that relate to the loans in the trust pool for the benefit of the Trustee (that is, for Chase) and the BSALTA trust. PSA, § 3.08. Chase further has the right to access information and documentation in Ocwen's possession regarding the loans at any time during normal business hours. *Id*.

HYDE & SWIGART
Consumer Protection Attorneys

69. Ocwen, as the Master Servicer, must make regular reports to Chase that reconcile the remittances actually made into a special "Protected Account" with what payments should have been made under the PSA. Ocwen must also make an annual compliance statement to Chase and have responsible offers sign that document.

70. Chase expressly delegated to Ocwen the responsibility to collect money owed under the promissory notes that the BSALTA trust owns and holds and requires Ocwen to "foreclose upon, repossess or otherwise comparably convert the ownership of Mortgage Properties securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments." PSA, § 3.13.

71. Above and beyond the express agency relationship between Chase and Ocwen as set out in the PSA, Chase also ratified Ocwen's actions by accepting the benefit of Ocwen's collection activities. Ratification occurs when an agent acts for a principal's benefit and the principal does not repudiate the agent's actions. *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 677 (7th Cir. 2004).

72. At no time did Chase terminate Ocwen's servicing authority due to Ocwen's collection methods or procedures, even though Ocwen has been sued more than one hundred times for violating state and federal consumer protection laws relating to collection methods and procedures in the years prior to the filing of this action.

73. Although Ocwen was the subject of multiple enforcement actions by state regulators in New York and California, Chase never sought to terminate Ocwen's master servicing authority. By failing to hold Ocwen accountable for Ocwen's violation of the law, Chase ratified Ocwen's behavior and is jointly and severally liable for all damages, fees, and costs.

HYDE & SWIGART
Consumer Protection Attorneys

## COUNT I

### NEGLIGENT VIOLATIONS OF THE

### TELEPHONE CONSUMER PROTECTION ACT (TCPA)

### 47 U.S.C. 227

### [AGAINST ALL DEFENDANTS]

74.  Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

75.  The foregoing acts and omissions constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of the TCPA, 47 U.S.C. 227.

76.  As a result of Ocwen's negligent violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

### COUNT II

### KNOWING AND/OR WILLFUL OF THE

### TELEPHONE CONSUMER PROTECTION ACT (TCPA)

### 47 U.S.C. 227

### [AGAINST ALL DEFENDANTS]

77.  Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

78.  The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227.

79.  As a result of Ocwen's knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

# COUNT III

## FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §1692 ET SEQ.

## [AGAINST DEFENDANTS OCWEN MORTGAGE SERVICING, INC., OCWEN LOAN SERVICING, LLC ONLY]

80. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of this Complaint as though fully stated herein.

81. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §1692 et seq.

82. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. §1692k(a)(1); statutory damages in the amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant.

## ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

## CAL. CIV. CODE § 1788-1788.32.

## COUNT IV

## [AGAINST ALL DEFENDANTS]

83. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

84. The foregoing acts and omissions constitute numerous and multiple violations of the Rosenthal Act, including but not limited to each and every one of the above-cited provisions of the Rosenthal Act, Cal. Civ. Code § 1788-1788.32.

85. As a result of each and every violation of the Rosenthal Act, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to

1   $1,000 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's

2   fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Defendant.

### COUNT V

### NEGLIGENCE

### [AGAINST ALL DEFENDANTS]

86.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

87.   Ocwen had a duty to use care to not infringe on consumers' privacy rights when collecting on alleged debts and not calling Plaintiff more than a thousand times to harass and/or abuse Plaintiff.

88.   Ocwen breached that duty by calling Plaintiff on Plaintiff' cellular telephone more than a thousand times, as discussed above, and continued to call despite Plaintiff's request that the calls stop.

89.   Plaintiff was harmed and suffered injury as described above.

90.   The negligence of Ocwen was a substantial and proximate factor in causing Plaintiff this harm and injury described above.

91.   As said conduct was carried out by Ocwen in an oppressive, malicious, despicable, gross and wontonly negligent manner, said conduct demonstrates Ocwen's conscious disregard for the rights and safety of Plaintiff or their family. As such Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof at trial.

### COUNT VI

### [AGAINST ALL DEFENDANTS]

### NEGLIGENCE PER SE - TELEPHONE CONSUMER PROTECTION ACT

92.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

93. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff.

94. Thus, Plaintiff is within the protective class which the TCPA is designed to protect.

95. As described above, Defendants breached their duty when they violated the TCPA.

96. Ocwen's violation of the TCPA was a substantial and proximate factor in causing Plaintiff this harm and injury described above.

97. As said conduct was carried out by Ocwen in an oppressive, malicious, despicable, gross and wontonly negligent manner, said conduct demonstrates Ocwen's conscious disregard for the rights and safety of Plaintiff. As such Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants, and Plaintiff be awarded damages from Defendants, as follows:

- Statutory damages of $500.00 for each negligent violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

- Statutory damages of $1,500.00 for each knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3);

1        • An award of actual damages pursuant to California Civil Code §
2          1788.30(a);
3        • An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code
4          § 1788.30(b);
5        • An award of costs of litigation and reasonable attorney's fees, pursuant
6          to Cal. Civ. Code § 1788.30(c);
7        • A permanent injunction, restraining and enjoining Defendant from
8          communicating with Plaintiff in a manner that violates 47 U.S.C. § 227;
9        • Special, general, compensatory, and punitive damages; and
10       • Any and all other relief that this Court deems just and proper.
11   98.  Pursuant to the seventh amendment to the Constitution of the United States of
12       America, Plaintiff is entitled to, and demands, a trial by jury.
13   Respectfully submitted,

14                                      **Hyde & Swigart**

15

16   Date: May 10, 2017                 By:/s/ Joshua B. Swigart
17                                           Joshua Swigart
                                             Attorneys for Plaintiff
18   Abbas Kazerounian, Esq.
     California Bar No.: 249203
19   **KAZEROUNI LAW GROUP, APC**
20   245 Fischer Avenue, Unit D1
     Costa Mesa, CA 92626
21   Phone: (800) 400-6808
22   FAX: (800) 520-5523
     ak@kazlg.com
23
24   Mark Ankcorn
     California Bar No.: 166871
25   Ankcorn Law Firm, PLLC
26   1060 Woodcock Road, Suite 128
     Orlando, Florida 32803
27   321-422-2333
28   Email: mark@ankcornlaw.com