UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE SELBY,<br><br>        Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>        Defendant. | Case No.: 3:17-CV-973-CAB-BLM<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS**<br><br>[Doc. Nos. 11, 30] |

Defendant Ocwen Loan Servicing, LLC ("Ocwen") has filed two motions: (1) a motion to stay this case pending a ruling from the United States Court of Appeals for the D.C. Circuit [Doc. No. 11]; and (2) a motion to dismiss for lack of standing and failure to state a claim [Doc. No. 30]. The motions have been fully briefed, and the Court deems them suitable for submission without oral argument. For the following reasons, the motion to dismiss is granted with respect to Plaintiff's lack of standing, the motion to stay is denied as moot, and Plaintiff is ordered to show cause as to subject matter jurisdiction over the state law claims.

**I. Background**

Plaintiff filed her original complaint on May 11, 2017. The original complaint asserted claims for negligent and intentional violations of the Telephone Consumer Protection Act (the "TCPA"), claims under both the federal Fair Debt Collection Practices Act (the "FDCPA") and California's Rosenthal Fair Debt Collection Practices Act (the

"Rosenthal Act"), and common law claims for negligence and negligence per se. [Doc. No. 1.] The original complaint named three defendants: (1) Ocwen Mortgage Servicing, Inc.; (2) Ocwen Loan Servicing, LLC; and (3) JPMorgan Chase Bank, N.A. ("JPMorgan"), as trustee for Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2004-13. The two Ocwen defendants filed motions to dismiss the original complaint and to stay this litigation pending a decision in *ACA International v. FCC*, No. 15-1211 (D.C. Cir.).

Instead of opposing the motion to dismiss, Plaintiff voluntarily dismissed Ocwen Mortgage Servicing, Inc. and filed a first amended complaint ("FAC") against only Ocwen and JPMorgan. The FAC asserted the same claims except for the negligence per se claim. Once again, Ocwen moved to dismiss the FAC, and once again, instead of opposing the motion to dismiss, Plaintiff amended her complaint. The second amended complaint ("SAC"), which remains the operative pleading, names only Ocwen as a defendant and asserted only the two TCPA claims, the Rosenthal Act claim, and a negligence claim.

According to the SAC, in 2004, Plaintiff borrowed money secured by real property located in San Diego, California (the "Mortgage"). The property was not Plaintiff's primary residence, and the proceeds from the Mortgage were used for "personal, family, and household purposes." [Doc. No. 29 at ¶ 18.] In 2009, Plaintiff's attorney "sent a written notice of representation to Bank of America, which at the time was the servicer of the Mortgage." [*Id.* at ¶ 19.] At some point before 2013, the Mortgage went into default. [*Id.* at ¶ 20.] In 2013, Ocwen took over servicing the Mortgage from Bank of America. [*Id.*] Plaintiff's attorney sent a letter dated September 20, 2013, "notifying Ocwen of its violations of state and federal debt collection laws and re-affirming that Plaintiff was represented by counsel." [*Id.* at ¶ 22.]

Between November 20, 2014 and August 11, 2016, Ocwen called Plaintiff's cellular telephone 1008 times using an automatic telephone dialing system ("ATDS") in an effort to collect on the Mortgage debt. [*Id.* at ¶¶ 27, 35.] The SAC alleges that Plaintiff "did not provide express consent to Defendant to receive calls on [her] cellular telephone," and that she "clearly revoked any type of express consent, if prior express consent ever existed, by

stating that [she] no longer wished to be contacted by phone." [*Id.* at ¶¶ 29, 31.] Ocwen's collection calls allegedly caused Plaintiff frustration and distress, "disrupted [her] daily activities and the peaceful enjoyment of [her] personal and professional life, including the ability to use [her] phone," and caused her to miss "important communications from friends and family." [*Id.* at ¶¶ 41-43.]

Ocwen now moves to dismiss Plaintiff's TCPA claims under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, and the state law claims under Rule 12(b)(6) for failure to state a claim.

## II. Standing to Sue for TCPA Violations

### A. Legal Standards for Dismissal Under Rule 12(b)(1)

Standing under Article III pertains to the Court's subject matter jurisdiction and therefore is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

The standing to sue doctrine is derived from Article III of the Constitution's limitation of the judicial power of federal courts to "actual cases or controversies." *Spokeo v. Robins*, ––– U.S. –––, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997)). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "The party invoking federal jurisdiction

bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561 (internal citations omitted).

The first element, injury in fact, "is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S.Ct. at 1547–48 (quoting *Raines*, 521 U.S. at 820, n. 3, 117 S.Ct. 2312). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). "'For an injury to be "particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id*. (quoting *Lujan*, 504 U.S. at 560, n.1, 112 S.Ct. 2130). Meanwhile, "[a] 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id*. (citing Black's Law Dictionary 479 (9th ed. 2009)). Therefore, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. at 1549. A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. *Id*.

### B. Discussion

The factual allegations relevant to the question of whether Plaintiff has Article III standing to assert claims under the TCPA are materially indistinguishable from the facts in *Romero v. Department Stores National Bank*, 199 F.Supp. 3d 1256 (S.D. Cal. 2016), which was decided by this Court. In that case, as in this one, the plaintiff claimed to have received calls from a defendant who was trying to collect a debt and asserted that those calls violated the TCPA because they were made using an ATDS after Plaintiff had revoked her consent to receive such calls. The defendant moved for summary judgment that the plaintiff lacked standing to assert claims for TCPA violations. The primary difference between this case and *Romero* is that *Romero* was at the summary judgment stage while this case is at the motion to dismiss stage. However, assuming the truth of all of Plaintiff's factual

allegations, including that Ocwen used an ATDS to call Plaintiff's cellular telephone 1008 times in connection with its efforts to collect on the Mortgage debt, that Plaintiff either never consented or had revoked her consent to receive these calls, and that these calls caused Plaintiff frustration and distress, the Court's reasoning in *Romero* is equally applicable here and also warrants dismissal of the TCPA claims in the SAC for lack of standing.

The Ninth Circuit's decisions since *Romero* do not require a different outcome. Plaintiff relies extensively on the Ninth Circuit's recent opinion in *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017), as supporting the existence of Article III standing here. Plaintiff's reliance is misplaced. *Van Patten* addressed whether the recipient of telemarketing texts suffered a concrete injury in fact sufficient to confer Article III standing for a TCPA claims. *Van Patten*, however, did not hold that receipt of any telephone call satisfies the concrete injury in fact requirement for standing to assert TCPA claims. To the contrary, the Ninth Circuit specified that "[t]he TCPA establishes the substantive right to be free from *certain types of phone calls and texts* absent consumer consent." *Van Patten*, 847 F.3d at 1043 (*emphasis* added).

Elsewhere in the *Van Patten* opinion, the Ninth Circuit specified that the "certain types of phone calls and texts" that give a recipient standing to assert a TCPA violation are those made by telemarketers, noting that "in enacting the TCPA, Congress made specific findings that 'unrestricted *telemarketing* can be an intrusive invasion of privacy' and are a 'nuisance,'" and that "Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited *telemarketing* phone calls and fax *advertisements*." *Id.* (*emphasis* added). Therefore, "Congress aimed to curb *telemarketing* calls to which consumers did not consent by prohibiting such conduct and creating a statutory scheme giving damages if that prohibition was violated." *Id.* (*emphasis* added). Based on this Congressional intent, the Ninth Circuit held that the recipients of unsolicited telemarketing calls have suffered a concrete injury in fact sufficient to confer Article III standing to bring a claim under the TCPA. *Id.*

In light of the Ninth Circuit's determination that the TCPA was crafted to protect consumers' concrete interests in avoiding invasions of privacy and nuisances attributable to unsolicited *telemarketing* calls and texts, the question becomes whether the SAC alleges TCPA "violations that actually harm, or at least that actually create a 'material risk of harm' to, this concrete interest." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1115 (9th Cir. 2017). The SAC does not satisfy this requirement. All of the calls at issue here relate to Ocwen's efforts to collect a debt and do not relate to telemarketing. Calls from debt collectors are undoubtedly unwanted, stressful, and frustrating, but the TCPA was not intended to protect any concrete interests associated with calls from debt collectors or creditors. As a result, Ocwen's use of an ATDS to contact Plaintiff's cellular telephone in connection with its efforts to collect a debt was "a bare procedural violation of the [TCPA] that is 'divorced from' the real harms that [the TCPA] is designed to prevent." *Robins*, 867 F.3d at 1115. Accordingly, any harms alleged in the SAC are not injuries in fact that give Plaintiff standing to assert claims under the TCPA.

### III.     Disposition

For the foregoing reasons, it is hereby **ORDERED** that Ocwen's motion to dismiss is **GRANTED** with respect to Plaintiff's TCPA claims and those claims are **DISMISSED** for lack of Article III standing. Accordingly, the motion to stay is **DENIED AS MOOT**.

The dismissal of the TCPA claims raises questions about this Court's subject matter jurisdiction over the remaining claims. Although it is not entirely clear, the SAC appears to assert subject matter jurisdiction based on the existence of a federal question (the TCPA claims) along with supplemental jurisdiction over the state law claims, while also alleging the existence of diversity jurisdiction. To the extent jurisdiction was premised on the existence of a federal question, the Court's lack of jurisdiction over the only federal claims asserted in the SAC precludes the exercise of supplemental jurisdiction over the remaining state law claims. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002) (holding that upon dismissal of the federal claim for lack of standing, there was no discretion to retain supplemental jurisdiction over the state law claims).

Meanwhile, to the extent jurisdiction is premised on diversity, Plaintiff's lack of standing for her TCPA claims means that she cannot rely on the damages available under the TCPA to satisfy the amount-in-controversy requirement. *See Harris v. CVS Pharmacy, Inc.*, No. EDCV1302329ABAGRX, 2015 WL 4694047, at *5 (C.D. Cal. Aug. 6, 2015) ("Absent any standing to invoke Rhode Island law, the Court lacks jurisdiction to entertain Plaintiff's claims under the RIDTPA, and Plaintiff cannot rely on the RIDTPA's statutory damages provision to satisfy CAFA's $5,000,000 amount-in-controversy requirement."). In other words, unless at least $75,000 remains in controversy based on the Rosenthal Act and negligence claims, the Court lacks subject matter jurisdiction over these claims as well. Because it is not clear from the face of the SAC that $75,000 remains in controversy based only on the Rosenthal Act claim and the negligence claim, Plaintiff is hereby **ORDERED TO SHOW CAUSE** in writing, on or before **November 30, 2017**, why the remaining state law claims should not be dismissed for lack of subject matter jurisdiction.

It is **SO ORDERED**.

Dated: November 16, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge